15390

THOMPSON v. J. A. JONES CONST. CO.

19 S. E. (2d), 226

October, 1941.

*Messrs. Elliott, McLain, Wardlaw* and *Elliott,* of Columbia, for appellant,

*Mr. John W. Jennings,* of Columbia, for respondent,

March 18, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE STUKES.

The plaintiff, respondent here, brought this action for damages by the service of summons and complaint on August 5, 1941. Because of the nature of the issue the material allegations of the complaint are copied:

"2. Plaintiff alleges that on August 1, 1941, he was employed by and was working for J. A. Jones Construction

Company, Inc., as an employee and that he was working directly under the supervision and direction of T. M. Parkman foreman employed by and working for the defendant and that his duty as an employee was that of a water boy, and as such it was his duty to take care of the ice, make up ice water and deliver the same to various employees working under the direction and supervision of T. M. Parkman.

"3. The plaintiff is informed and believes that T. M. Parkman the foreman had his son—Parkman employed and working on the job under his direction and supervision as a carpenter or carpenter's helper and that about 8:30 a. m., when the ice was delivered on the job, Mr. T. M. Parkman, the foreman specifically instructed the plaintiff herein to be careful with the ice and see that it was kept wrapped up because he did not know whether they would get any more ice on that day. Plaintiff further alleges that he had made up ice water and was delivering same when someone unwrapped the ice and chipped up a large quantity of same and left the ice unwrapped and that he, the plaintiff, came back and found the ice unwrapped and saw a man with a thermos bottle standing nearby whom the plaintiff later learned was Mr. T. M. Parkman's son, who admitted to him that he unwrapped the ice and left it exposed and when told by the plaintiff that the foreman's instructions were that no one should bother the ice except the said plaintiff, got furiously mad, cursed and abused the plaintiff and threatened to beat him up.

"4. Plaintiff alleges that a few minutes before 2 p. m., he delivered ice water to the employee who had told him he had unwrapped and left the ice and that at the time the said employee again cursed and abused the plaintiff while standing on the outside of the building and that the said employee left his job or place where the water had been delivered to him, went around and came into the building where the plaintiff was and did then and there strike, bruise and did bodily harm to the plaintiff without a just cause or provocation and that said plaintiff knowing that he was a

colored man and that the aggressor and his aids and assistants were white men sat the bucket of water down and left the premises, went directly to the foreman, T. M. Parkman and told him what had happened and asked for a discharge stating at the time that he could not work on the job, or properly perform his duties when some white man was threatening to jump on him and did strike, beat, and bruise him, however, the foreman refused at the said time to give him the discharge notice asked for and instructed the plaintiff to come go with him to the place where the difficulty had arisen so that he could point out the man who had caused the trouble and when he (the foreman) reached the premises and found out that his son was the employee that had caused trouble, he, the said T. M. Parkman, agent and foreman of the defendant had a private talk or conversation with young Parkman then called to the plaintiff, who thought he was going to get the discharge asked for, and when he, the said plaintiff came within reaching distance of the defendant's agent or foreman, the said foreman who was then furiously mad grabbed the plaintiff in his shirt collar without notice or just cause or provocation and did with the aid and assistance of his son, double team, strike, beat, bruise, and commit an assault and battery upon body and person of the plaintiff by striking him in the face with his fist and kicking him about the body. Plaintiff further alleges that the defendant through and by its agent did willfully, maliciously and high-handedly strike the plaintiff, beat him unmercifully about the head and face and other portions of his body and did push him back over and against an automobile fender and hold him down while he and his son both struck, beat, bruised, and assaulted the said plaintiff, seriously injuring and damaging his face, head, neck, shoulders, and body.

"5. Plaintiff alleges that no advances were made by him and no causes were given to justify the willful, malicious, high-handed, and negligent acts of the defendant in creating an assault and battery upon him and that under the circumstances he was unable to protect himself and that he was

caused to suffer physically and mentally and was afraid that he was going to be killed and possibly would have been more seriously injured and damaged had it not been for one H. M. Smith, a white man, who pulled the defendant's foreman, T. M. Parkman off and away from the plaintiff.

"6. Plaintiff alleges that the acts and doings of the defendant were caused by and due to the gross carelessness of the defendant in having in its employment a foreman with an ungovernable temper and a total disregard for the plaintiff's rights and that the above set out injuries were caused to this plaintiff by the willful, malicious, and negligent acts of the defendant's agent. T. M. Parkman while acting in the usual and ordinary scope of his employment or agency.

"7. Plaintiff alleges that he was injured and damaged by the defendant while performing the duties assigned to him on orders given him by the foreman and that the acts and doings of the defendant in assaulting or injuring and damaging the plaintiff was willful, malicious, high-handed and done by the defendant's agent or foreman while handling, supervising, directing or working a group of men placed in his custody or control.

"8. Plaintiff alleges that the acts and doings of the defendant were the direct and proximate cause of his having been willfully and maliciously assaulted, bruised and made to suffer both physically and mentally and that as a further result of the willfulness, carelessness and high-handedness on the part of the defendant he has been made to suffer both actual and punitive damages."

The answer of the appellant contained a general denial and the following by way of a second defense: "1. The defendant alleges that if the plaintiff suffered the injuries as set forth in the complaint, which is specifically denied, this action is barred under the provisions of Section 11 of the South Carolina Workmen's Compensation Act, as amended in 1937, in that both plaintiff and the defendant elected to come under the terms of said Act, and such section provides that in such event it shall exclude all other rights and reme-

dies of such employees, as against employer at common law, or otherwise, on account of such injury.".

Upon service of the answer respondent moved before the Judge of the Richland County Court, wherein the action was pending, for an order striking out the foregoing quoted defense "as irrelevant, sham, redundant, immaterial, and not responsive to the plaintiff's complaint and in violation of Section 14 of the Workmen's Compensation Act, as amended in 1937 [Act March 27, 1937, 40 St. at Large, p. 153], in that the tort action complained of does not come under the Workmen's Compensation Law," etc.

The Court granted the order, the material part of his ruling being as follows: "After a careful consideration of the matter, it appears to me that the complaint does not set forth facts sufficient to bring this case within the purview of the Workmen's Compensation Act, and that this case is governed by the case of *Stewart v. McLellan's Stores* reported in 194 S. C., page 50, 9 S. E. (2d), page 35."

The appellant states the question raised by its exceptions to be: "Is it proper for a defendant to plead the defense, in a common law action, that both plaintiff and defendant are subject to the Workmen's Compensation Act [Act July 17, 1935, 39 St. at Large, p. 1231], and, therefore, the action is barred by the provisions of Section 4 of the Act?"

Respondent relies upon the position that the Compensation Act is applicable only to injury by accident and cites Section 2 of the Act, sub-section (f), wherein "injury" is defined as such by accident arising out of and in the course of employment.

But the question is not that simple and in one form or another has been the subject of many decisions of the Courts of other jurisdictions under their various compensation laws. Digests of a multitude of such cases, and the full reports of some, are found in and preceding annotations in L. R. A., 1916-A, 306, 309; L. R. A., 1918-E, 498; 15 A. L. R., 588; 21 A. L. R., 758; 29 A. L. R., 437; 40 A. L. R., 1122; 72 A. L. R., 110, and 112 A. L. R., 1258.

The general rule deducible from these decisions and we think based upon reason and justice is that although an employee be willfully assaulted by another, whether fellow servant, foreman or outsider, the resulting injury will be deemed accidental and within the terms of the Compensation Law when it can be said that the assault approximately resulted from the prosecution of the employer's business,—in the terms of the Act; arose out of and in the course of the employment. Section 2(f).

The words "arose out of" refer to the origin or the cause of the accident while the words "in the course of employment" refer to the time, place and circumstances under which the accident occurs. Even though the injury was not one that could have been foreseen or expected, it may be that after the event, it may be seen to have had its origin in the nature of the employment. *Bertha Scholl v. Industrial Commission,* 366 Ill., 588, 10 N. E. (2d), 360, 112 A. L. R., 1254, 28 R. C. L., 796, *et seq.*

While a willful assault may be said not to be an accident so far as the aggressor is concerned, to him who is not the aggressor there exists the unexpected factor necessary to constitute an "accident" as contemplated by workmen's compensation laws. 71 C. J., 581-584, and cases cited in the foot notes.

The wording of the Workmen's Compensation Law of North Carolina, in the respects here under consideration, appears to be identical with ours, or rather ours is like theirs, for it was there in force several years before enactment in our State. In *Conrad v. Cook-Lewis Foundry Company,* 198 N. C., 723, 153 S. E., 266, 268, one employee ambushed and shot another after having had an earlier quarrel and blows. The resulting injury was held an accident within the terms of their (the same as our) Section 2(f) as it was found to have arisen out of and in the course of employment. A part of what was there said by the Court is quoted:

"Was the injury suffered by the claimant an injury by accident? In construing the word 'accident' as used in the

Compensation Act, we must remember that we are not administering the law of negligence. Under that law an employee can recover damages only when the injury is attributable to the employer's want of due care; but the act under consideration contains elements of a mutual concession between the employer and the employee by which the question of negligence is eliminated. 'Both had suffered under the old system; the employers by heavy judgments, * * * the workmen through the old defenses or exhaustion in wasteful litigation. Both wanted peace. The master, in exchange for limited liability, was willing to pay on some claims in future, where in the past there had been no liability at all. The servant was willing not only to give up trial by jury, but to accept far less than he had often won in Court; provided he was sure to get the small sum without having to fight for it'. *Stertz v. Industrial Insurance Commission,* 91 Wash., 588, 158 P., 256, 258, Ann. Cas., 1918 B, 354.

"The result was that the Compensation Law discarded the theory of fault as the basis of liability and conferred an absolute right of compensation on every employee who is injured by an 'accident arising out of and in the course of employment.' *Smith v. [Carolina Power and] Light Company,* 198 N. C., 614, 152 S. E., 805. The word 'accident,' as used here, has been defined as an unlooked for and untoward event which is not expected or designed by the person who suffers the injury. Annotation, Workmen's Compensation, L. R. A., 1916A, 227; *Furst Kerber Cut Stone Company v. Mayo,* 82 Ind. App., 363, 144 N. E., 857. In *Garrett v. Gadsden Cooperage Company,* 209 Ala., 223, 96 So., 188, it is said that the Courts, looking at the matter from the workman's viewpoint, and construing the legislative intent as being, on economic grounds, to provide compensation for employees against personal injury not expected or designed by them, have adopted a meaning deemed necessary to give effect to the broad legislative purpose. Accordingly, while the decisions are not uniform, it is generally held that the mere fact that an injury is the result of the

willful or criminal assault of a third person does not prevent the injury from being accidental. *In re McNicol,* 215 Mass., 497, 102 N. E., 697, L. R. A., 1916A, 306, and note; *Stasmos v. State Industrial Commission,* 80 Okl., 221, 195 P., 762, 15 A. L. R., 576; *Pinkerton National Detective Agency v. Walker,* 157 Ga., 548, 122 S. E., 202, 35 A. L. R., 557; *Anderson v. Security Building Company,* 100 Conn., 373, 123 A., 843, 40 A. L. R., 1119."

\*   \*   \*   \*   \*

"In *Leonbruno v. Champlain Silk Mills, supra* [229 N. Y., 470, 128 N. E., 711, 712, 13 A. L. R., 522], the New York Court of Appeals used this language: 'The risks of injury incurred in the crowded contracts of the factory through the acts of fellow workmen are not measured by the tendency of such acts to serve the master's business. Many things that have no such tendency are done by workmen every day. The test of liability under the statute is not the master's dereliction, whether his own or that of his representatives acting within the scope of their authority. The test of liability is the relation of the service to the injury, of the employment to the risk.' "

See, also, *Goodwin et al. v. Bright et al.,* 202 N. C., 481, 163 S. E., 576, and *Wilson v. Boyd & Goforth, Inc.,* 207 N. C., 344, 177 S. E., 178.

Only the facts and circumstances of the injury can determine whether it is, in the foregoing view, compensable and, therefore, whether the employee's remedy is exclusively under the Compensation Law. *Cummings v. McCoy,* 192 S. C., 469, 7 S. E. (2d), 222.

In view of these considerations an employer's defense that his employee's right is so restricted and that the attempted common law cause of action set up in a complaint can be made the subject only of a claim under the Compensation Law should not ordinarily be stricken from the answer of the employer. On its face it states a valid defense and only after the establishment of the facts

and circumstances surrounding the injury can it be determined whether the employee is attempting to sue at law upon a claim cognizable only under the Workmen's Compensation Law. Thus we think the Court below erred in striking the alleged defense from the answer.

It is noted that the Court below relied, as does the respondent in this Court, upon the decision in *Stewart v. McLellan's Stores,* 194 S. C., 50, 9 S. E. (2d), 35. But in that case the willful assault was committed by the defendant corporation's manager and without the infliction of injuries compensable under the act, and throughout the opinion of the Court and in the order on petition for rehearing the thought dominated that the case decided was that of an assault by the employer itself; it was said in the order, by the *alter ego,* but in the opinion, that the question involved the commission of an assault by the employer. Here the allegations of the complaint are not so; they refer to a fellow employer and foreman.

It was said in the *Stewart case, supra,* that it might be conceded in the consideration of that case that if an employee suffer an injury in the course of his employment at the hands of a fellow workman, it would be an accident; and again in the order denying a rehearing that it might be argued that such would fall within the Compensation Act. Thus we do not think the case is authority here; it is applicable to a willful assault by an employer.

It should be remembered that there is no common law cause of action on the part of the employee against the employer for an assault by a fellow servant or employee, so the holding that injuries resulting therefrom are compensable under the terms of the Workmen's Compensation Act is favorable to employees and is a logical extension of the beneficient provisions of the law and a serving of the purpose to include employees within its benefits rather than exclude them. *Ham v. Mullins Lumber Company,* 193 S. C., 66, 7 S. E. (2d), 712.

It is the judgment of this Court that the order appealed from be reversed and the case remanded to the lower Court for trial in the light of the principles herein announced.

Judgment reversed.

MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE and CIRCUIT JUDGE WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE, concur.

MR. CHIEF JUSTICE BONHAM dissents.

MR. CHIEF JUSTICE BONHAM (dissenting):

I am unable to concur in the opinion of Mr. Justice Stukes in which it is stated: "It was said in the *Stewart case, supra* [*Stewart v. McLellan's Stores Company, et al.,* 194 S. C., 50, 9 S. E. (2d), 35], that it might be conceded in the consideration of that case that if an employee suffer an injury in the course of his employment at the hands of a fellow workman, it would be an accident; and again in the order denying a rehearing that it might be argued that such would fall within the Compensation Act. Thus we do not think the case is authority here; it is applicable to a willful assault by an employer."

In connection with the foregoing reference to the case of *Stewart v. McLellan's Stores Company* [194 S. C., 50, 9 S. E. (2d), 37], the opinion in which was concurred in by all members of the Court, the practical question was this:

"* * * If an employer commits an assault and battery upon an employee and no physical disability follows which would entitle the employer to compensation under the Act, is the employee debarred of bringing action at common law?

*     *     *     *     *

" 'A compensation act that is compulsory or that has been accepted by both employer and employee excludes other remedies *only when conditions existing in a particular case have brought it within the terms of the Act.* The mere fact that the employer and employee are subject to the act does not deprive them of their common law remedies if conditions in the case place it outside the scope of the act, as, for example, where the injury suffered was not caused by an accident, or

did not result in disability; nor will the action at law be dismissed * * *.'. [Emphasis added]. 71 C. J., Section 1489, page 1482."

The complaint in the present case does not show that the plaintiff suffered any physical injury that resulted in his disability, or which prevented his doing his ordinary work. In fact, it simply shows a simple assault and battery, which however outrageous it may have been, does not bring him within the purview of the Workmen's Compensation Act.

Quoting further from the case of *Stewart v. McLellan's Stores Company, supra,* this Court said at page 54 of 194 S. C., at page 37 of 9 S. E. (2d):

"The Act of South Carolina No. 610, found in the Acts of the General Assembly of 1936, Act July 17, 1935, 39 St. at Large, p. 1231, contains Section 31, the title of which is 'Schedule of Disability for Certain Injuries.' There is provision under subsections (a) to (t), inclusive, stating the nature of the injuries and the amounts of disability which lie from the loss of a thumb down to and including every other physical disability to subsection (t), which provides for the loss of the vision of an eye and for serious facial and head disfigurement. It nowhere provides for an injury which leaves no physical disability or loss. Section 29 provides: 'Where the incapacity for work resulting from the injury is total, the employer shall pay,' etc. Section 30 provides: 'Except as otherwise provided in the next section hereafter, where the incapacity for work resulting from the injury is partial, the employer shall pay,' etc.

"It is apparent from these provisions that where no physical disability has been suffered by the claimant there is no ground for action under the Workmen's Compensation Act. In this present case, upon what ground would the commission award compensation to the claimant?"

How would the commission arrive at compensation to the claimant in this case The complaint does not show that the plaintiff lost any time from his labor, or that he has lost any money. It does not show that he has paid out any money

for doctors' bills or medicines or hospital expenses. The commission could not consider the question of punitive damages, and I am unable to see upon what grounds it would award him compensation.

Without arguing the case further, it seems to me that the trial Court was correct. His Honor's decision was based upon a motion to strike from the answer the allegation that the parties were bound by the terms of the Workmen's Compensation Act.

In order to maintain an action under the Workmen's Compensation Act, the complaint must state facts which bring it within the terms of the Act, which the complaint in this case does not do.

For this reason I think the judgment below should be affirmed.